**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

               Plaintiff,

    -vs.-

BUFNY II ASSOCIATES, L.P., HOUSING
TRUST FUND CORPORATION, THE CITY
OF NEW YORK, SALIMATA BOKUM,
ALMAMY JAMMEH, LAMINE KONE, the
NEW YORK CITY DEPARTMENT OF
HOUSING PRESERVATION AND
DEVELOPMENT, the NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD,
and JOHN DOES #1 THROUGH JOHN DOE
#100, inclusive, the names of the last 100
defendants being fictitious, the true names of
said defendants being unknown to plaintiff, it
being intended to designate any occupants or
tenants of the mortgaged premises who are in
default in the payment of rent for which a
proceeding is now pending by the mortgagor
and/or other persons or parties having or
claiming an interest in or lien upon the
mortgaged premises subordinate to that of the
mortgagee, if the aforesaid individual
defendants are living, and if any or all of said
individual defendants be dead, their heirs at
law, next of kin, distributes, executors,
administrators, trustees, committees, devisees,
legatees and the assignees, lienors, creditors,
successors in interest of them, and generally all
persons having or claiming under, by, through
or against the said defendants named as a class,
any right, title or interest in or lien upon the
premises described in the complaint herein,

               Defendants.

---

No.    1:23-cv-09795   


**COMPLAINT**

Plaintiff Federal National Mortgage Association ("Plaintiff" or "Fannie Mae"), by and through its undersigned counsel, Akin Gump Strauss Hauer & Feld LLP, for its complaint against Defendants BUFNY II Associates, L.P., the Housing Trust Fund Corporation, the City of New York, Salimata Bokum, Almamy Jammeh, Lamine Kone, the New York City Department of Housing Preservation and Development, the New York City Environmental Control Board, and John Doe #1 through John Doe #100 (the "Complaint") alleges as follows:

## NATURE OF THE ACTION

1.      This is a mortgage foreclosure action on a property located at 531 Lenox Avenue, New York, NY; 163 West 136th Street, New York, NY; 102 West 137th Street, New York, NY; 106 West 137th Street, New York, NY; 110 West 137th Street, New York, NY; 124 West 137th Street, New York NY; and 176 West 137th Street, New York, NY 10030 known as the BUFNY II Apartments (collectively, the "Property").  Plaintiff's mortgage on the Property secures a loan in the principal amount of $2,000,000 which has been in default since June 1, 2023.  With this action, Plaintiff seeks foreclosure of the Property as its lawful remedy under the governing loan documents as well as a money judgment against BUFNY II Associates, L.P. (the "Borrower-Defendant").

## PARTIES

### I.      Plaintiff

2.      Plaintiff is a federally chartered corporation organized and existing under the laws of the United States, 12 U.S.C. §1716 *et seq*., with its principal place of business in Washington, D.C, with offices located at Midtown Center, 1100 15th Street NW, Washington, DC 20005.

3.      Plaintiff Fannie Mae is the current owner and holder of the Note and Mortgage referenced in this Complaint.

4.    Fannie Mae is a government-sponsored enterprise created by Congress to enhance the nation's housing finance market.  Under its federal statutory charter, Fannie Mae has a public mission to provide liquidity, stability, and affordability to the U.S. housing market, including the market for quality and affordable rental housing.

5.    Fannie Mae is operating under the conservatorship of the Federal Housing Finance Agency ("FHFA"), which is an independent agency of the United States created in 2008 to supervise certain government sponsored enterprises including Fannie Mae.  *See* 12 U.S.C. § 4511 *et seq*.  Among other powers, Congress authorized the Director of FHFA to place Fannie Mae into conservatorship under certain statutorily defined conditions, which the Director did in 2008.  As Conservator, FHFA has broad statutory powers, including the powers to preserve and conserve Fannie Mae's assets and property, and to collect obligations due Fannie Mae.  FHFA's ability to exercise its statutory powers and functions as Conservator is protected by federal law.  *See, e.g.*, 12 U.S.C. § 4617(f).

## II.    Defendants

6.    Upon information and belief, Defendant BUFNY II Associates, L.P. is a New York limited partnership located at 555 Bergen Avenue, Bronx, NY 10455.

7.    Upon information and belief, Defendant Housing Trust Fund Corporation is a New York public benefit corporation with an office located at 38-40 State St, Albany, NY 12207.

8.    Upon information and belief, Defendant the City of New York is a New York municipality.  The operative documents discussed herein note the City of New York was acting by and through its Department of Housing Preservation and Development, which is a New York City agency with an office located at 100 Gold St, New York, NY 10038.

9.      Upon information and belief, Defendant Salimata Bokum is an individual currently residing in New York.

10.     Upon information and belief, Defendant Almamy Jammeh is an individual currently residing in New York.

11.     Upon information and belief, Defendant Lamine Kone is an individual currently residing in New York.

12.     Upon information and belief, Defendant New York City Department of Housing Preservation and Development is a New York City agency with an office located at 100 Gold St, New York, NY 10038.

13.     Upon information and belief, Defendant New York City Environmental Control Board, also known as the Office of Administrative Trials and Hearings, is a New York City agency with an office located at 9 Bond Street, 7th Floor, Brooklyn, New York 11201.

14.     Upon information and belief, Defendants "JOHN DOES #1-100" are unknown persons or entities joined as party defendants because they may be tenants and persons in possession of the Property or have some interest in and to the Property (including that of judgment creditors) inferior and subordinate to that of Plaintiff or may be persons who hold or have collected the rents, issues and profits relating to or arising from the Property.

**<u>JURISDICTION AND VENUE</u>**

15.     This Court has jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 in value, exclusive of interest and costs, and is between citizens of different states.

16.     For purposes of diversity jurisdiction, Plaintiff is a citizen of Washington, D.C.  12 U.S.C. §1717(a)(2)(B).

4

17.     For purposes of diversity jurisdiction, upon information and belief, neither the following defendants nor any member thereof (or member of such member) are citizens of Washington, D.C. or have a principal place of business in Washington, D.C.: BUFNY II Associates, L.P., the Housing Trust Fund Corporation, the City of New York, Salimata Bokum, Almamy Jammeh, Lamine Kone, the New York City Department of Housing Preservation and Development, the New York City Environmental Control Board, and John Doe #1 through John Doe #100.

18.     This Court has personal jurisdiction over Defendant BUFNY II Associates, L.P. because, *inter alia*, it agreed to submit to personal jurisdiction in New York State according to the terms of the Note and Mortgage Agreement (defined *infra*).

19.     This Court has personal jurisdiction over Defendant Housing Trust Fund Corporation because it is a New York state public benefit corporation with a principal place of business in New York State.

20.     This Court has personal jurisdiction over the City of New York because it is a municipality in New York.

21.     Upon information and belief, this Court has personal jurisdiction over Defendants Salimata Bokum, Almamy Jammeh and Lamine Kone because they reside in New York.

22.     This Court has personal jurisdiction over Defendant New York City Department of Housing Preservation and Development because it is a New York City agency with a principal place of business in New York State.

23.     This Court has personal jurisdiction over Defendant New York City Environmental Control Board, also known as the Office of Administrative Trials and Hearings, because it is a New York City agency with a principal place of business in New York State.

24.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the property that is the subject of this action is located in the Southern District of New York, in New York County, New York.

25.     Venue is also proper pursuant to 28 U.S.C. § 1391, because this dispute arises out of the terms of agreements signed by the parties that are governed by New York law and contain forum selection clauses designating this Court as a proper venue.

<u>**FACTUAL ALLEGATIONS**</u>

<u>**The Mortgage and Loan Documents**</u>

26.     On or about May 11, 2005, the Borrower-Defendant executed a Multifamily Note (the "<u>Note</u>") for the benefit of Chartermac Mortgage Capital Corporation ("<u>Chartermac</u>"), the original lender under the Note.  Under the terms of the Note, the Borrower-Defendant agreed to pay to the holder of the Note (the "<u>Lender</u>") the sum of $2,000,000.00 plus interest.  A true and correct copy of the Note is annexed as **Exhibit A** and incorporated herein. Under Section 3(c) of the Note, the Borrower-Defendant was required to make monthly payments in the amount of $12,184.56 to the Lender on the first day of each month from July 1, 2005 until the entire unpaid amount is paid (the "<u>Monthly Payments</u>").  The principal sum and all accrued but unpaid interest was due and payable on the maturity date of June 1, 2035 (the "<u>Maturity Date</u>").

27.     In order to secure its indebtedness under the Note, on or about May 11, 2005, the Borrower-Defendant simultaneously executed a Multifamily Mortgage, Assignment of Rents and Security Agreement (the "<u>Mortgage Agreement</u>").  A true and correct copy of the Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on May 18, 2005, File No. 2005051800576002, is annexed as **Exhibit B** and incorporated herein.  Under the Mortgage Agreement, the Borrower-Defendant mortgaged to

Chartermac the Property, including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "Mortgage").

28.     Collectively, the Note, the Mortgage Agreement, and all attachments thereto and assignments thereof are referred to as the "Loan Documents."

29.     Under Section 3 of the Mortgage Agreement, the Borrower-Defendant executed an Assignment of Rents (the "Assignment of Rents") to Lender.  Under the Assignment of Rents, the Borrower-Defendant absolutely and unconditionally assigned and transferred to Lender all "Rents," as that term is defined in the Mortgage Agreement.  In return, the Lender granted the Borrower-Defendant a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender, to apply all Rents to pay the installments of interest and principal due and payable under the Note and the other amounts due and payable under the Loan Documents, and to pay the costs and expenses of managing and maintaining the Property.  The Borrower-Defendant was further authorized to retain any remaining Rents.

30.     Upon the occurrence of an Event of Default (*see* Section 22 of the Mortgage Agreement) under the Loan Documents, the Borrower-Defendant's license to collect rents automatically terminates, and Lender is entitled to receive all Rents as they become due and payable.  To that end, under Section 3(b) of the Mortgage Agreement, the Borrower-Defendant agreed to pay any such Rents over to Lender.

**The Property**

31.     The Property is located at 531 Lenox Avenue, New York, NY; 163 West 136th Street, New York, NY; 102 West 137th Street, New York, NY; 106 West 137th Street, New York, NY; 110 West 137th Street, New York, NY; 124 West 137th Street, New York NY; and 176 West 137th Street, New York, NY 10030 and is more particularly described in **Exhibit C.**

**Personal Liability of Borrower-Defendant**

32.     Under Section 9 of the Note, the Borrower-Defendant agreed to be held personally liable to Lender "for the repayment of a portion of the Indebtedness equal to any loss or damage suffered by Lender as a result of" certain enumerated items listed therein.  *See* Exhibit A.

33.     Among the items for which the Borrower-Defendant agreed to accept personal liability was its failure to pay Lender, upon demand after an Event of Default, all Rents (*see* Section 9(b) of the Note) to which Lender is entitled under Section 3(a) of the Mortgage Agreement and the amount of all security deposits collected by the Borrower-Defendant from tenants then in residence.  Exhibit A.

**Assignment of the Loan Documents to Plaintiff**

34.     On May 11, 2005, Chartermac endorsed the Note to Fannie Mae.

35.     On May 11, 2005, Chartermac assigned the Mortgage Agreement and Note to Fannie Mae (the "Mortgage and Note Assignment") in a written instrument duly recorded in the Office of the City Register of the City of New York on June 10, 2005 under Control Number 2005000338646.  A true and correct copy of the Mortgage and Note Assignment is annexed as **Exhibit D** and incorporated herein.

36.     Plaintiff is in possession of the original Note, endorsed and made payable to Plaintiff, which is attached hereto as Exhibit A.  By virtue of Plaintiff's possession of the original Note, as well as the Mortgage and Note Assignment, Plaintiff became and is still the mortgagee on, and owner and holder of, the Note and the Mortgage Agreement.

**Defaults, Fees, and Remedies, Including Foreclosure, Under the Loan Documents**

37.     Under Section 22(a) of the Mortgage Agreement, any failure by the Borrower-Defendant to pay or deposit when due any amount required by the Note, the Mortgage Agreement,

or any other Loan Document is deemed an automatic "Event of Default." Exhibit B. This includes failure to pay the Monthly Payments.

38.    Under Section 43 of the Mortgage Agreement, following an Event of Default, the Lender may declare the entire amount of the Indebtedness immediately due and payable, may institute judicial foreclosure proceedings, is entitled to the *ex parte* appointment of a receiver, and may invoke any other remedies permitted by the Loan Documents and New York law. Lender is also "entitled to collect all costs and expenses allowed by New York law, including attorneys' fees, costs of documentary evidence, abstracts, title reports[,] statutory costs[,] and any additional allowance made pursuant to Section 8303 of the Civil Practice Law and Rules." Exhibit B.

39.    Furthermore, under Section 6 of the Note, following an Event of Default, "the entire unpaid principal balance, any accrued interest, the prepayment premium payable [], if any, and all other amounts payable under this Note and any other Loan Document shall at once become due and payable, at the option of Lender, without any prior notice to Borrower." Exhibit A.

40.    Under Section 8 of the Note, if any Monthly Payment remains past due for 30 days or more, the unpaid principal balance and all accrued interest shall bear interest from the Maturity Date at the "Default Rate." *See* Exhibit A. The Default Rate is defined in the Note to be the lesser of 10.15% (i.e., four percentage points above the contract interest rate) and the maximum rate of interest permitted under applicable law.

41.    Additionally, under Section 7 of the Note, if any monthly installment due under the Loan Documents is not received by the Lender within 10 days after the date such amount is due, the Borrower-Defendant is obligated to pay to Lender a late charge equal to 5% of the amount due.

42.    Furthermore, under Section 11 of the Note, the Borrower-Defendant agreed to pay, among other things "all expenses and costs, including fees and out-of-pocket expenses of attorneys

and expert witnesses and costs of investigation, incurred by Lender as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy proceeding . . . or judicial or non-judicial foreclosure proceeding." Exhibit A.

43.   Finally, under Section 3(f) of the Mortgage Agreement, if the Rents are not sufficient to meet the Lender's costs of taking control and managing the Property, Lender is entitled to have any additional funds it expends to operate the Property added to the "<u>Indebtedness</u>" due under the Loan Documents.

**<u>Failure to Make Monthly Payments Due and Related Events of Default</u>**

44.   On June 1, 2023, the Borrower-Defendant failed to pay the Monthly Payment due as required under the Loan Documents.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

45.   On July 1, 2023, the Borrower-Defendant failed to pay the Monthly Payment due as required under the Loan Documents.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

46.   On August 1, 2023, the Borrower-Defendant failed to pay the Monthly Payment due as required under the Loan Documents.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

47.   On September 1, 2023, the Borrower-Defendant failed to pay the Monthly Payment due as required under the Loan Documents.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

48.   On October 1, 2023, the Borrower-Defendant failed to pay the Monthly Payment due as required under the Loan Documents.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

49.   On November 1, 2023, the Borrower-Defendant failed to pay the Monthly Payment due as required under the Loan Documents.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

**Liens on the Property and Related Events of Default**

50.   Under Section 16 of the Mortgage Agreement, "Borrower acknowledges that, to the extent provided in Section 21, the grant, creation or existence of any mortgage, deed of trust, deed to secure debt, security interest or other lien or encumbrance (a 'Lien') on the Mortgaged Property . . . whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the lien of this instrument, is a 'Transfer' which constitutes and Event of Default."  *See* Exhibit B.

51.   As discussed in greater detail in paragraphs 63-670 *infra*, according to a recently-issued title report for the Property, the following parties have Liens (as that term is defined in the Mortgage Agreement), judgments, or *lis pendens* against the Property, each of which are junior to the Mortgage: Salimata Bokum, Almamy Jammeh, Lamine Kone, the New York City Department

of Housing Preservation and Development, and the New York City Environmental Control Board.[1]
The creation and existence of those Liens are "Transfers" constituting Events of Default under the
Mortgage Agreement.  Alternatively, to the extent that any such judgments or *lis pendens* ripen
into Liens, they will similarly constitute Transfers and Events of Default under the Mortgage
Agreement.

**Transfers of Interests and Related Events of Default**

52.   Section 21 of the Mortgage Agreement is amended and restated in its entirety in
Exhibit C to the Mortgage Agreement.  Pursuant to Section 21(a)(2), a Transfer of a Controlling
Interest in Borrower constitutes an Event of Default as those terms are defined under the Mortgage
Agreement.  *See* Exhibit B.  For Borrower entities that are limited partnerships, Section
21(d)(2)(ii)(B) defines the Transfer of a Controlling Interest as: "a Transfer of any partnership
interests which would cause the Initial Owners to own less than 51% of all limited partnership
interests in such entity."  *See id.*  Borrower-Defendant is a limited partnership.

53.   Section 21(d)(1) defines "Initial Owners" as "the persons or entities who on the
date of the Note, directly or indirectly, own in the aggregate 100% of the ownership interests in
Borrower or that entity."  On the date of the Note, 100% of the ownership interests in Borrower-
Defendant were owned by: (1) Sobro Lenox Corp., the General Partner; (2) Related Corporate VIII
SLP, L.P., the Special Limited Partner; and (3) Related Corporate Partners VIII, L.P., the Limited
Partner.

54.   Upon information and belief, Sobro Development Corporation acquired 99.99% of
the ownership interests in Borrower-Defendant without ever seeking or obtaining the consent of

---

[1] Additionally, Defendants Housing Trust Fund Corporation and City of New York have junior mortgage
liens against the Property, but those junior mortgage liens are the subject of written agreements with Plaintiff, and
do not in themselves constitute Events of Default.

Fannie Mae.  Thus, there was a Transfer (or a series of Transfers) that caused the Initial Owners to own less than 51% of all limited partnership interests in the Borrower-Defendant.  This Transfer (or series of Transfers) constituted a Transfer of a Controlling Interest under the Mortgage Agreement.  In turn, the Transfer of a Controlling Interest constituted an Event of Default under the Mortgage Agreement.

**Demand for Payment of Loan and Termination of License to Collect Rents**

55.   As of the filing of this Complaint, the Borrower-Defendant still has not paid the Monthly Payments, as required under the Loan Documents, that have been due and owing since June 1, 2023.

56.   On August 14, 2023, Plaintiff sent a letter to the Borrower-Defendant notifying it that it was in default of its obligations under the Loan Documents by virtue of its failure to pay the Monthly Payments due since June 1, 2023 (the "Demand Letter").  A true and correct copy of the Demand Letter is annexed as **Exhibit E** and incorporated herein.

57.   In the Demand Letter, Plaintiff demanded that the Borrower-Defendant pay immediately all of the outstanding principal and accrued and unpaid interest under the Note, in its entirety, together with all applicable charges and all costs, expenses, and attorneys' fees incurred by Plaintiff.  *See* Exhibit E.  Plaintiff notified the Borrower-Defendant that, by reason of the defaults, Plaintiff may immediately institute foreclosure proceedings under the Mortgage and may otherwise exercise any and all other rights and remedies enumerated in the Loan Documents or otherwise available at law or in equity.  *See id*.  These rights and remedies included, without limitation, the appointment of a receiver over the Property.  *See id.*

58.   Additionally, in the Demand Letter, Plaintiff gave notice that the Borrower-Defendant's license to collect Rents at the Property was terminated, and that Plaintiff was then

entitled to all Rents as they become due and payable. *See id.* The Demand Letter went on to demand that any Rents collected by the Borrower-Defendant after the occurrence of the Event of Default on June 1, 2023 be received and held by the Borrower-Defendant in trust for the benefit of Plaintiff, and only applied to "bona fide current operating expenses to third parties in connection with the operation of the property with excess paid to Fannie Mae, to be applied in accordance with the Loan Documents." *Id*.

59.     As of the filing of this Complaint, the Borrower-Defendant has not turned over any Rents or security deposits to Plaintiff.

**Pre-Negotiation Letter**

60.     On September 11, 2023, Plaintiff, Lument Real Estate Capital, LLC (the "Servicer"), the Borrower-Defendant, and South Bronx Overall Economic Development Corporation, as "Key Principal," entered into a pre-negotiation letter establishing the terms and conditions for negotiations over the mortgage loan (the "PNL"). A true and correct copy of the PNL is annexed as **Exhibit F** and incorporated herein.

61.     In connection with the PNL, the Borrower-Defendant "waive[d] and release[d] any and all claims that [it] may have against Fannie Mae or the Servicer related to the Loans as of the date of this letter." Exhibit F. Furthermore, Borrower-Defendant "waive[d] and release[d] any and all defenses that [it] may have to the rights and remedies of Fannie Mae, and as appropriate, the Servicer, under the provisions of the Loan Documents and applicable law." *Id.*

62.     Finally, pursuant to the PNL, the Borrower-Defendant "acknowledge[d] that each of the Loan Documents is valid, fully enforceable in accordance with its terms, and evidences legal and binding obligations which are in full force and effect" and "that the Loan is in default and that the Loan was properly accelerated by Fannie Mae." *Id.*

**Liens on the Property**

63.     Under Section 16 of the Mortgage Agreement, the Borrower-Defendant acknowledged that "to the extent provided in Section 21, the grant, creation or existence of any mortgage, deed of trust, deed to secure debt, security interest or other lien or encumbrance (a 'Lien') on the Mortgage Property (other than the lien of this Instrument) or on certain ownership interests in Borrower, whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the Lien of this Instrument, is a 'Transfer' which constitutes an Event of Default." Exhibit B.

64.     According to a recently-issued title report for the Property, the following parties have liens or judgments against the Property, each of which is junior to the Mortgage: the Housing Trust Fund Corporation, the City of New York, Salimata Bokum, Almamy Jammeh, Lamine Kone the New York City Department of Housing Preservation and Development, and the New York City Environmental Control Board.

65.     The Housing Trust Fund Corporation lent $2,000,000.00 to the Borrower-Defendant in a written agreement recorded on the Property on March 9, 1999.  This lien was expressly made subordinate to the Mortgage pursuant to a Subordination Agreement and First Mortgagee Waiver between the Housing Trust Fund Corporation, CharterMac Mortgage Capital Corporation, and the Borrower-Defendant dated May 14, 2005 and recorded in the Office of the City Register, New York City, on June 10, 2005 under CRFN 2005000338645.  *See* **Exhibit G**.

66.     The City of New York, acting by and through its Department of Housing Preservation and Development lent $1,798,110 to the Borrower-Defendant in a written agreement recorded on the Property on March 9, 2012.  This lien, which post-dated the Mortgage, was expressly made subordinate to the Mortgage pursuant to a Subordination Agreement between the

City of New York, acting by and through its Department of Housing Preservation and Development, the Borrower-Defendant, and Fannie Mae dated February 28, 2012 and recorded in the Officer of the City Register, New York City, on March 9, 2012 under CFRN 2012000094741. *See* **Exhibit H**.

67.     Defendants Salimata Bokum, Almamy Jammeh, and Lamine Kone obtained a judgment against the Borrower-Defendant related to a wrongful death suit in the amount of $16,512,427.07 that was perfected on February 6, 2023 and docketed against the Property March 1, 2023.

68.     The New York City Department of Housing Preservation and Development filed two *lis pendens* actions against the Property that appear in the title report: (a) Index No. AEP 18/116, filed on August 22, 2018, with the nature of the action being to correct existing violations and underlying conditions; and (b) Index No. HP 505/19, filed on March 11, 2019, with the nature of the action being to direct compliance with the alternate enforcement program and correct existing violations and underlying conditions.

69.     Two judgments appear in the title report that list the New York City Department of Housing Preservation and Development as creditor: (a) Index No. HP-902/2016, filed October 6, 2016, in the amount of $8,590.00, related to a lawsuit filed in the Civil Court for the City of New York by Ruth McDaniels; and (b) Index No. HP-1305/2018, filed September 6, 2018, in the amount of $2,520.00, related to a lawsuit filed in the Civil Court for the City of New York by Beverly Smith.  The title report shows the latter as having been perfected on August 24, 2018.

70.     The New York City Environmental Control Board (also known as the Office of Administrative Trials and Hearings) also issued 43 judgments against the Property docketed between September 2017 and July 2023, resulting in a total charge of $16,175.00.   These

judgments stem from: (a) one violation issued by the New York City Department of Buildings; (b) two violations issued by the New York City Fire Department; and (c) forty violations issued by the New York City Department of Sanitation.

**Receivership**

71. Upon the occurrence of an Event of Default, the Borrower-Defendant acknowledged repeatedly in the Loan Documents that Plaintiff is entitled to the *ex parte* appointment of a receiver to oversee the Property.

72. First, Section 43 of the Mortgage Agreement specifically provides, that, upon the occurrence of an Event of Default, Plaintiff "shall be entitled to the appointment of a receiver, without notice." Exhibit B.

73. Second, under Section 3(d) of the Mortgage Agreement, "[i]f an Event of Default has occurred and is continuing . . . without the necessity of providing prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property" in order to, among other things, "enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents pursuant to Section 3(a), protecting the Mortgaged Property or the security of this Instrument, or for such other purposes as Lender in its discretion may deem necessary or desirable."

74.    Under Section 3(d) of the Mortgage Agreement, the Borrower-Defendant further agreed that, if Plaintiff seeks the appointment of a receiver following an Event of Default, it will consent to "the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law."

75.    Under Section 3(d) of the Mortgage Agreement, the Borrower-Defendant further agreed that, immediately upon the appointment of a receiver, it will "surrender possession of the Mortgaged Property to . . . the receiver . . . and shall deliver to . . . the receiver . . . all documents, records (including record on electronic or magnetic media), accounts, surveys, plans, and specifications related to the Mortgaged Property and all security deposits and prepaid Rents."

## FIRST CAUSE OF ACTION
### (Foreclosure of the Mortgage and Deficiency Judgment)

76.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1-75 above as though fully set forth herein.

77.    The Borrower-Defendant has committed multiple Events of Default under the Loan Documents.  As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the Loan Documents, including foreclosure of the Property.

78.    The following amounts are due and owing under the Loan Documents, no part of which has been paid by the Borrower-Defendant, although duly demanded: (a) the outstanding principal sum of $1,244,541.51; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since June 1, 2023; (c) late charges; and (d) rental payments and security deposits owed under the Note and Assignment of Rents to be determined.  These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the Property,

18

attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the Property.

79.   Plaintiff has fulfilled all of its obligations under the Loan Documents.

80.   Chartermac and its successor-in-interest Lument have fulfilled all of their obligations under the Loan Documents.

81.   No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the Loan Documents, or any part thereof.

82.   The Housing Trust Fund Corporation has been made a defendant by virtue of its lien on the Property on account of its loan to Borrower-Defendant, which loan was expressly made subordinate to the Mortgage in a written agreement recorded against the Property.

83.   The City of New York has been made a defendant by virtue of its lien on the Property on account of its loan to Borrower-Defendant, which loan was subordinate when made and was expressly made subordinate to the Mortgage in a written agreement recorded against the Property.

84.   Defendants Salimata Bokum, Almamy Jammeh, and Lamine Kone were made defendants by virtue of their judgment against the Borrower-Defendant related to a wrongful death suit.

85.   The New York City Department of Housing Preservation and Development has been made a defendant by virtue of its apparent liens and/or judgments against the Property, as set forth at greater length herein.

86.   The New York City Environmental Control Board has been made a defendant by virtue of its outstanding judgments against the Property as set forth at greater length herein.

87.   The Defendants John Doe # 1 through John Doe # 100 have been made defendants because they are or may be tenants or may be in possession of the Property, or may be corporations or other entities or person who claim, or may claim, a lien against the Property.

88.   Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the Mortgage on the Property and (ii) awarding Plaintiff a money judgment against the Borrower-Defendant for the portion of the total indebtedness due under the Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated in Section 9 and Schedule B of the Note, including Rents and security deposits as described therein.

89.   Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the Property should be sold subject to the following:

(a) any state of facts that an inspection of the premises would disclose;

(b) any state of facts that an accurate survey of the premises would show;

(c) covenants, restrictions, easements, and public utility agreements of record, if any;

(d) building and zoning ordinances of the municipality in which the Property is located and possible violations of same;

(e) any rights of tenants or persons in possession of the Property; and

(f) any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale.

90.   Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by the Borrower-Defendant after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

## PRAYER FOR RELIEF

Wherefore, Plaintiff demands judgment as follows:

(a)     That the defendants, and each of them, and all persons claiming under defendants, or any of them, subsequent to the commencement of this action and the filing of a notice of pendency thereof, be barred and foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Property and each and every part and parcel thereof;

(b)     That a receiver possessing such powers as those granted to him/her under the Mortgage Agreement and applicable law be appointed for the Property;

(c)     That the Property may be decreed to be sold in one or more parcels according to applicable law;

(d)     That the monies arising from the sale of Property may be brought into Court or to an account designated by Plaintiff;

(e)     That the amount due Plaintiff under the Loan Documents be adjudged, and that from the monies arising from the foregoing sale, Plaintiff be paid the amount due it under the Loan Documents with interest to the time of such payment, the expenses of sale, and the costs and expenses of this action, including reasonable attorneys' fees and expenses, together with any monies which may be paid by Plaintiff for taxes, water and sewer charges and assessments, insurance premiums, and all other charges and liens thereon to be paid, with interest at the Default Rate upon such amounts from the dates of the respective payments and advances thereof, so far as the amounts of monies properly allocable thereto will pay the same;

(f)     That the Borrower-Defendant may be adjudged to pay all amounts due under Section 3.02(a) of the Loan Agreement for which it agreed to be held personally liable; and

(h)     That Plaintiff be awarded such other and further relief as shall be just and equitable.

New York, New York
Dated:  November 6, 2023

Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD**

By:  *<u>/s/ Dean L. Chapman Jr.</u>*
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-8095
Facsimile: (212) 872-1002

*Attorney for Plaintiff Federal National Mortgage*
*Association*